UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------

               :

SPENCER NEAL,               :          CASE NO. 1:17-cv-1625

               :

      Plaintiff/Counter-Defendant,    :

               :

vs.               :          OPINION & ORDER

               :          [Resolving Docs. 35, 37]

SECOND SOLE OF YOUNGSTOWN,    :

INC., *et al.*               :

               :

      Defendants/Counter-Plaintiffs.   :

               :

--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Counter-Defendant Spencer Neal sued a variety of defendants, alleging that they violated the Americans with Disabilities Act ("ADA") and its Ohio state law equivalent.[1] Three of those defendants (the "Counter-Plaintiffs") filed counterclaims against Neal.[2] They allege, among other things, that Neal conspired with his attorney to extort money from businesses and individuals by bringing meritless ADA claims against them in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO").[3] Neal moves to dismiss the RICO counterclaims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]

For the reasons set forth below, the Court **GRANTS** Neal's motions to dismiss.

## I. BACKGROUND

Counter-Defendant Neal filed several lawsuits under the ADA before he filed his complaint in this case.[5] Counter-Plaintiffs allege that in this case and each of 12 other lawsuits Neal utilized

---

[1] Doc. 1. For the purposes of this opinion, the Court will use "ADA" as a shorthand for both the federal and state law claims.

[2] Docs. 27, 29. The three Counter-Plaintiffs are Second Sole of Youngstown, Inc.; Sportsworld Custom Imprinted Apparel, LLC; and Karen Parish. Docs. 27, 29.

[3] Docs. 27, 29.

[4] Docs. 35, 37. The Counter-Plaintiffs oppose. Docs. 55, 56.

[5] Docs. 27 at 34–35 ¶ 18, Doc. 29 at 33–34 ¶ 14. At this stage of the litigation, the Court takes the allegations in the counter-complaint as true and recites the facts in this section accordingly. *See Cates v. Crystal*

Case No. 1:17-cv-1625
Gwin, J.

a boilerplate complaint to sue a variety of defendants under the ADA.[6]  They further claim that

settlement letters and summonses were sent via U.S. Mail to the defendants in each case.[7]

The Counter-Plaintiffs assert that, "[i]n each of the cases" Neal has filed "that have been

dismissed" as of the date of their counter-complaints, Neal has "agreed to settle his claims . . . for

what can be deemed as [the] nuisance, defense value of those claims together with other agreed

remedial conditions for settlement."[8]

The Counter-Plaintiffs allege that this lawsuit is part of a conspiracy between Counter-

Defendant Neal and his attorney to extort money from the individuals and businesses Neal sues.[9]

The gravamen of their scheme, according to the Counter-Plaintiffs, is to falsely accuse various

businesses and individuals of violating the ADA and take advantage of the expense of litigation to

force the defendants to pay some amount to settle the cases.[10]

The Counter-Plaintiffs contend that filing each of these lawsuits amounted to both mail

fraud under 18 U.S.C. § 1341 and a violation of the Hobbs Act, 18 U.S.C. § 1951.[11]  As such, they

say, each lawsuit or claim amounts to a predicate act under RICO and, as a result, Neal is liable to

them for damages and other relief.[12]

Neal moves to dismiss those RICO claims, alleging that the Counter-Plaintiffs have failed

to state a claim upon which relief may be granted.[13]  The Counter-Plaintiffs oppose.[14]

---

*Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bikerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  The Court's opinion is not meant to imply any opinion as to what the evidence at trial would show.
[6] Doc. 27 at 34–36 ¶ 18, 20; Doc. 29 at 33–34 ¶¶ 14, 16.
[7] Doc. 27 at 34–36 ¶¶ 15, 20; Doc. 29 at 32–34 ¶¶ 11, 16.
[8] Doc. 27 a t35 ¶ 19; Doc. 29 at 34 ¶ 15.
[9] Doc. 27 at 44–47 ¶¶ 54–55, 62–64; Doc. 29 at 52–55 ¶¶ 77–78, 85–87.
[10] Doc. 27 at 44–47 ¶¶ 54–55, 62–64; Doc. 29 at 52–55 ¶¶ 77–78, 85–87.
[11] Doc. 27 at 44–48 ¶¶ 53, 56–67; Doc. 29 at 51–55 ¶¶ 76, 79–88.
[12] *See* Doc. 27 at 44–48 ¶¶ 53, 68; Doc. 29 at 51–55 ¶¶ 76, 91.
[13] Docs. 35, 37.
[14] Docs. 55, 56.

Case No. 1:17-cv-1625
Gwin, J.

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the Court construes "the complaint in the light most favorable to the [nonmoving party], accept[ing] its allegations as true, and draw[ing] all reasonable inferences in [its] favor."[15]  In order to survive the motion to dismiss, the complaint must allege sufficient facts "to state a claim for relief that is plausible on its face."[16]  While "detailed factual allegations" are unnecessary, a counter-plaintiff must provide more than a "formulaic recitation of the elements of a cause of action."[17]

Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake."[18]

## III. DISCUSSION

"RICO was passed in 1970 to pursue the Mafia as a whole, tying the big bosses to the crimes of their underlings by claiming they were all part of a 'criminal enterprise.'"[19]  "Prosecutors have used RICO to pursue some of the highest-profile organized-crime families, including the Gambinos and Genoveses . . . ."[20]  While RICO is broad enough to reach beyond the mafia and other such large-scale criminal conspiracies,[21] the Counter-Plaintiffs have strayed far afield of the core purpose of the statute in bringing RICO claims against a disabled man and his attorney for having filed lawsuits under the ADA.

Still, were the RICO statute to mandate it, the Court would be obligated to allow this lawsuit to proceed, raised eyebrows notwithstanding.  In this case, however, the law and common

---

[15] *Cates*, 874 F.3d at 534 (quoting *Bikerstaff*, 830 F.3d at 396).
[16] *See Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).
[17] *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[18] Fed. R. Civ. P. 9(b).
[19] Nathan Koppel, *They Call It RICO, and It Is Sweeping*, Wall Street Journal, Jan. 20, 2011.
[20] *Id.*
[21] *See Id.*

sense are aligned.  The Counter-Plaintiffs have failed to allege plausible RICO claims.[22]

RICO forbids any person from engaging, through or for an enterprise, in a "pattern of racketeering activity," defined as participating in two or more predicate offenses listed in 18 U.S.C. § 1961(1).[23]  Both violations of the Hobbs Act and mail fraud qualify as predicate offenses.[24]  But Neal's actions do not qualify as violations of the Hobbs Act or mail fraud.

**A. Neal Did Not Commit Extortion Under the Hobbs Act**

The Hobbs Act prohibits individuals from, among other things, obstructing interstate commerce by means of extortion.[25]  The statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."[26]

As that definition makes clear, the means a person uses to obtain the property of another must be *wrongful* in order for his conduct to amount to extortion.  Simply put, the filing of a lawsuit—however frivolous—is not "wrongful" within the meaning of the Hobbs Act.[27]  So too for threatening to file a lawsuit (e.g. by mailing a demand letter).[28]

"Extortion is the antithesis of litigation as a means of resolving disputes."[29]  Indeed, we encourage parties to turn to the courts to resolve their disputes and decide what complaints are frivolous.[30]  "We trust the courts, and their time-tested procedures, to produce reliable results,

---

[22] Neal also contends that his activities are immunized under the *Noerr-Pennington* doctrine. Doc. 35-1 at 7–14; Doc. 37–1 at 9–14.  Because the Court concludes that the Counter-Plaintiffs have failed to allege a plausible RICO violation, it need not address that argument.

[23] 18 U.S.C. §§ 1961(5), 1962(c).

[24] *Id.* § 1961(1).

[25] *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 406–07 (6th Cir. 2012).

[26] 18 U.S.C. §1951(b)(2).

[27] *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1205–07 (11th Cir. 2003); *cf. Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion.").

[28] *Pendergraft*, 297 F.3d at 1206; *Am. Nursing Care of Toledo, Inc. v. Leisure*, 609 F. Supp. 419, 430 (N.D. Ohio 1984); *see also Vemco, Inc.*, 23 F.3d at 134.

[29] *Deck*, 349 F.3d at 1258.

[30] *Id.*; *Pendergraft*, 297 F.3d at1206.

separating validity from invalidity, honesty from dishonesty."[31]  In light of the other remedies available to compensate defendants for the burden of defending against frivolous lawsuits—including sanctions under Rule 11 and state common law tort claims—courts have rightly refused to turn every frivolous lawsuit or threatened lawsuit into a federal criminal offense.[32]

Moreover, it is by now well settled that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the courts'] duty is to adopt the latter."[33]  The First Amendment guarantees to every citizen the right "to petition the Government for a redress of grievances."[34]  That right includes the right to file lawsuits in federal court.[35]  Statutes that chill First Amendment activities are constitutionally disfavored.[36]  Turning every failed lawsuit into a potential criminal case or RICO predicate would certainly have a chilling effect on citizens' ability to petition courts to resolve their disputes.[37]  Indeed, "chilling" is, if anything, too mild a word.

Finally, it is absurd to think that Congress intended for courts to count filing lawsuits or sending demand letters as wrongful acts within the meaning of the Hobbs Act.  And that is a good reason to avoid interpreting the statute to reach such conduct.[38]  Litigation *is* expensive and "*can induce fear in a defendant.*"[39]  It might even be fair, "at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit."[40]  But to argue that Congress sought to punish

---

[31] *Id.*
[32] *Deck*, 349 F.3d at 1257–58; *Pendergraft*, 297 F.3d at 1206–08.
[33] *U.S. ex rel. Att'y Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909).
[34] U.S. Const. amend. I.
[35] *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004) (*quoting Pennwalt Corp. v. Zenith Lab., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979)).
[36] *See Garvin v. Rosenau*, 455 F.3d 233, 239 (6th Cir. 1972) (recognizing "the policy of protecting the First Amendment against possible chilling influences").
[37] *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 268 (8th Cir. 1984); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014); *see also Pendergraft*, 297 F.3d at 1206.
[38] *See Guzman v. U.S. Dep't. of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) (*quoting Lockhart v. Napolitano*, 573 F.3d 251, 261 (6th Cir. 2009)).
[39] *Deck*, 349 F.3d at 1258 (emphasis added); *Pendergraft*, 297 F.3d at 1206.
[40] *Deck*, 349 F.3d at 1258.

arguably frivolous litigation with criminal sanctions (and, in the case of a civil RICO suit like this one, treble damages[41]), in the absence of any clear statutory statement to that effect, proves too much.[42]

For all of these reasons, none of the activities the Counter-Plaintiffs complain of in their counter-complaints qualify as Hobbs Act extortion.

**B. Neal Did Not Commit Mail Fraud**

The mail fraud statute prohibits, among other things, the use of the U.S. Postal Service in connection with "any scheme or artifice to defraud" or "for obtaining money or property by means of false or fraudulent pretenses."[43]

The federal courts have defined "scheme to defraud" broadly.[44] Nevertheless, "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'"[45] In particular, "broad as are the words 'to defraud,' they do not include threat and coercion through fear or force."[46] That means that "exploiting [a person's] fear of economic loss," including their fear of incurring litigation expenses, does not amount to mail fraud.[47] Filing a frivolous suit hoping for a quick settlement may not be ethical, but it is not necessarily mail fraud.

"[I]f deceit, as well as fear, [were] intended," such a scheme might, in some cases, amount to mail fraud.[48] But, although "conditions of a person's mind may be alleged generally," Fed.R.Civ.P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which,

---

[41] 18 U.S.C. § 1964(c).

[42] *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) ("[W]e are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion.").

[43] 18 U.S.C. § 1341.

[44] *Pendergraft*, 297 F.3d at 1209.

[45] *Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989).

[46] *Fasulo v. United States*, 272 U.S. 620, 628 (1926).

[47] *See Pendergraft*, 297 F.3d at 1209 ("[F]ear is not fraud. A scheme to frighten is simply not criminalized by the mail-fraud statute.").

[48] *Id.*

accepted as true, make the state-of-mind allegation "plausible on its face."[49]   The Counter-Plaintiffs have not plead facts making it plausible that Neal had any intent to deceive the individuals he sued.

Neal's lawsuit generally alleged Counter-Plaintiffs' stores did not have compliant ingress and egress.[50]   In denying his claims,  the Counter-Plaintiffs do not assert that their stores complied with the accessibility provisions of the ADA.  Instead, they mostly argue that their buildings either already comply with the ADA, cannot practicably be made to comply, or are exempt from compliance for any number of reasons, including their inclusion in a historic restoration district.[51]

By saying that several of the earlier lawsuits were settled for their "defense" or "nuisance" value, the counter-complaints suggest that the defendants in those cases knew Neal's ADA claims were meritless, but settled them to end the litigation.[52]   Moreover, it stands to reason that all of the targets of Neal's lawsuits, including the defendants in this case, knew whether what he alleged about their premises was true.  It is not plausible that Neal intended to deceive the defendants as to the nature of their own buildings.[53]

More importantly, the scheme the Counter-Plaintiffs allege does not depend on the defendants Neal sues believing that there is any merit to his ADA claims.  The point is that they are willing to pay a settlement to end the litigation *regardless* of whether there is any merit to the claims.  There is no reason to infer that Neal had any intent to deceive the targets of his lawsuit when he had no reason to care whether they were deceived.  The result of the scheme—if the counter-complaints are to be believed—would have been the same either way.

---

[49] *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[50] *See generally* Doc. 1.

[51] Doc 27 at 21–43; Doc. 29 at 24–51.

[52] *See* Doc. 27 at 34–35 ¶¶ 18–19; Doc. 29 at 33–34 ¶¶ 14–15.

[53] *See Pendergraft*, 297 F.3d at 1209.

Finally, applying the mail fraud statute to Neal's conduct here raises the same constitutional and absurdity concerns as subjecting it to the Hobbs Act.

For all of these reasons, the Counter-Plaintiffs have failed to plead mail fraud, and thus have not established predicate offenses for RICO purposes.

## C. Counter-Plaintiffs' Claims Are Artfully Pleaded Abuse of Process Claims

If Counter-Plaintiffs attempts to classify Neal's litigation activities as extortion or mail fraud appear forced, it is because they are trying to avoid calling their claims what they really are. The proper cause of action to bring against Neal, if indeed his claims in this case or previous cases are frivolous, would be a claim for malicious prosecution or abuse of process or both.[54] Or, in the alternative, Counter-Plaintiffs could seek sanctions under Rule 11.[55]

But neither state tort claims nor violations of Rule 11 qualify as predicate offenses under RICO.[56] So the Counter-Plaintiffs have called them something else. The federal courts, however, are not so easily fooled by artful pleading: they evaluate claims by what they allege, not what they are labelled.[57] Parties "cannot plead [their] way around reality."[58]

---

[54] *See id.* at 1206–08; *I.S. Josephy Co., Inc.*, 751 F.2d at 267–68; *Curtis & Associates, P.C. v. Law Offices of David M. Bushman*, 758 F. Supp. 2d 153, 172–73 (E.D.N.Y. 2010).

[55] Fed. R. Civ. P. 11(c).

[56] 18 U.S.C. § 1961(1); *see also Von Bulow ex rel. Auersperg v. Von Bulow*, 657 F. Supp. 1134, 1143–46 (S.D.N.Y. 1987).

[57] *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ("Federal Rule of Civil Procedure 8(f) states that 'All pleadings shall be construed so as to do justice.' This rule directs courts to construe pleading liberally within the standards of the notice-pleading regime mandated by the Federal Rule of Civil Procedure. . . . Therefore, the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint.").

[58] *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1351 (11th Cir. 2017).

## IV. CONCLUSION

For those reasons, the Court **GRANTS** Counter-Defendant Neal's motions to dismiss the

RICO counterclaims brought by the Counter-Plaintiffs.


    IT IS SO ORDERED.


Dated:  January 9, 2018              *s/       James S. Gwin*
                                     JAMES S. GWIN
                                     UNITED STATES DISTRICT JUDGE