UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                          :
SPENCER NEAL,                             :          CASE NO. 1:17-cv-1625
                                          :
        Plaintiff/Counter-Defendant,      :
                                          :
vs.                                       :          OPINION AND ORDER
                                          :          [Resolving Docs. 81, 87, 88, 90, 91, 92, 93]
SECOND SOLE OF YOUNGSTOWN,                :
INC., *et al.*                            :
                                          :
        Defendants/Counter-Plaintiffs.    :
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Spencer Neal sued several defendants, alleging that they violated the Americans

with Disabilities Act ("ADA") and its Ohio state law equivalent.[1]  Several of those Defendants

filed counterclaims seeking a declaratory judgment that they did not violate the ADA.[2]

        Plaintiff Neal and Defendants Sportsworld Custom Imprinted Apparel, LLC and Karen

Parish have now filed cross-motions for summary judgment.[3]  In addition, Defendants Sportsworld

and Parish have moved to strike portions of two affidavits and exclude the testimony and reports

of Plaintiff Neal's expert witness, Derek Mortland.[4]  Those defendants also request a bench trial

on the ADA claims and that they be bifurcated from Plaintiff Neal's state-law claims.[5]

        For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

cross-motions for summary judgment.  The Court **GRANTS IN PART** and **DENIES IN PART**

---

[1] Doc. 1.  For the purposes of this opinion, the Court will use "ADA" as a shorthand for both the federal and state law claims except where there is some reason to differentiate between the two.

[2] Doc. 27 at ¶¶ 47–48; Doc. 29 at ¶¶ 70–71.  These Defendants also sought to assert a counterclaim under the Racketeering Influenced and Corrupt Organizations Act, but the Court dismissed those claims.  Doc. 65.

[3] Doc. 87; Doc. 88.  The parties oppose each other's motions for summary judgment.  Doc. 94; Doc. 96. And both parties reply.  Doc. 97; Doc. 98.

[4] Doc. 91; Doc. 92; Doc. 93.  Plaintiff Neal opposes.  Doc. 99; Doc. 100; Doc. 101.  Defendants reply.  Doc. 104; Doc. 105; Doc. 106.

[55] Doc. 90.  Plaintiff consents to a bench trial, but not to bifurcation.  Doc. 95.

the motions to exclude Mortland's testimony.  The Court **DENIES** the motion to strike portions of Plaintiff Neal's affidavit.  The Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike portions of Gerald Neal's affidavit.  Finally, the Court **GRANTS** the motion for a bench trial on Plaintiff Neal's ADA claim, but **DENIES** the motion to bifurcate.

## I. FACTUAL BACKGROUND

Defendant Sportsworld's primary business is screen printing and embroidery.[6]  It produces customized apparel for its customers, including "schools, sports teams, corporations, clubs, churches[,] and other organizations."[7]  Sportsworld also markets pre-decorated items representing three Medina-county high schools.[8]

Sportsworld operates two facilities.[9]  This case involves a facility located at 213 South Court Street in Medina, Ohio.[10]  Sportsworld leases the Court Street facility from Defendant Parish.[11]

Plaintiff Neal's primary complaint is that—as a person confined to a wheelchair—he cannot enter Sportsworld's Court Street facility.[12]  No one disputes that.  There is a six-inch step in front of the door to Sportsworld that would prevent any wheelchair-bound person from entering.[13]

Instead, the Defendants argue that (1) the Court Street facility is a historic building that is exempt from the ADA's requirements and (2) modifying the building to allow Plaintiff Neal and other handicapped persons access is not "readily achievable."[14]  Plaintiff Neal responds that

---

[6] Doc. 94-10 at 6.
[7] Doc. 88-9 at ¶ 3.
[8] *Id.* at ¶ 10.
[9] *Id.* at ¶ 6; Doc. 94-10 at 9.
[10] *See id.* at ¶ 6.
[11] *Id.*
[12] *See generally* Doc. 1 at ¶¶ 23–25
[13] Doc. 88-12 at 4.
[14] Doc. 88 at 12–25; Doc. 96 at 9–18; Doc. 97 at 4–13.

Defendants could use a portable ramp or modify the building's interior to allow him access.[15]

Although he does not discuss them in his complaint, Plaintiff Neal also claims that Sportsworld's signage, checkout counter, light switches, door mats, display racks, front door, door threshold, and door handles violate the ADA.[16]  Responding to this argument, Defendants protest that the ADA does not require many of the alterations Neal demands and that some of the changes he requests are not in areas of public accommodation.[17]

The parties have filed cross-motions for summary judgment.[18]  In addition, the Defendants have filed a bevy of evidentiary motions, a request for a bench trial, and a motion to bifurcate Plaintiff's ADA claims from his state-law claims.[19]

## II. *DAUBERT* MOTIONS

The Court begins by addressing the Defendants' motions to exclude the reports and testimony of Plaintiff's expert, Derek Mortland.  The Court grants that motion only in part.

### A. Content of Mortland's Reports and Testimony

Mortland is the ADA and Community Outreach Coordinator for Access Ohio and the Center for Disability Empowerment.[20]  His expert reports and his expected testimony consist of essentially four information batches.

First, Mortland provides measurements of various surfaces and items at Defendants' building.  He measured the rise of the step leading into Sportsworld Custom Apparel, the depth of the landing outside the store's front door, the height of the doorway threshold, the height of light

---

[15] Doc. 87-1 at 14–25; Doc. 94 at 15–24; Doc. 98 at 5–8.

[16] *See generally* Doc. 94-4.  While omitting these claims in his complaint would ordinarily doom Plaintiff Neal's attempt to obtain relief on them, the Defendants have impliedly consented to amending the complaint by briefing and arguing these issues without objecting to their omission.  *See Ruiz-Bueno v. Scott*, 639 F. App'x. 354, 358–59 (6th Cir. 2016); *Watters v. Comm'r. of Soc. Sec. Admin.*, 530 F. App'x. 419, 424 (6th Cir. 2013).

[17] Doc. 88-1 at 21–24.

[18] Doc. 87; Doc. 88.

[19] Doc. 81; Doc. 90; Doc. 91; Doc. 92; Doc. 93.

[20] Doc. 81-2.

switches inside the store, the amount of knee or toe clearance at the service counter, the width of a doorway inside the facility, the height of merchandise above the floor.[21]  And so on.

Second, Mortland noted the presence or absence of various features of the facility, such as unsecured floor mats, signage, and handicap-appropriate door handles.[22]

Third, Mortland suggested a number of changes to the facility that would make it accessible to handicapped individuals—particularly those in a wheelchair.[23]  He also gives budgets for those changes.[24]  For example, he proposed purchasing a $600 portable ramp to allow access to the front of the store and proposes a $6,500 reversal of the swing of the front door so that it can be pushed open from the outside.[25]

Finally, Mortland specifies in some detail what he believes the ADA and the regulations implementing it require and how he believes the Sportsworld store fails to comply with those requirements.[26]

## B. Legal Standard

The Federal Rules of Evidence allow any witness to testify as to any fact about which he has personal knowledge.[27]  But opinion testimony is more circumscribed.[28]

A non-expert witness may provide opinions if they are "rationally based on [his] perception," "helpful to clearly understanding [his] testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge."[29]  An expert witness "qualified . . . by knowledge, skill, experience, training, or education," however, may testify in the

---

[21] Doc. 81-1 at 4–21.
[22] *Id.* at 11–14, 16, 18.
[23] *Id.* at 4–24.
[24] *Id.*
[25] *Id.* at 4–8.
[26] *Id.* at 4–24.
[27] *See* Fed. R. Evid. 602.
[28] Fed. R. Evid. 702, 703.
[29] Fed. R. Evid. 701.

form of an opinion if (1) the expert's specialized knowledge will help the trier of fact, (2) the expert's opinion "is based on sufficient facts or data," (3) the opinion "is the product of reliable principles and methods," and (4) those principles or methods have been "reliably applied."[30]

Regarding expert testimony, district courts serve as gatekeepers,[31] recognizing that the Federal Rules of Evidence "strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other."[32] Courts should admit expert testimony only where it finds "the expert to be (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable."[33]

That said, "the rejection of expert testimony is the exception rather than the rule."[34] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[35]

## C. Measurements and Observations of Defendants' Facility

The Court begins by rejecting the Defendants' *Daubert* challenge to Mortland's measurements and observations of the store's physical features. While the defense is correct that the jury does not need an expert's assistance to evaluate measurements and features,[36] those portions of Mortland's report are not expert testimony. Rather, they are Mortland's observations based on his personal knowledge: Mortland inspected the facility and made measurements.[37] And

---

[30] Fed. R. Evid. 702.
[31] *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).
[32] *See United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) (quoting *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176 (6th Cir. 2009)).
[33] *Id.*
[34] Fed. R. Evid. 702, advisory committee's note, 2000 amend.; *In Re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).
[35] *Daubert*, 509 U.S. at 596.
[36] Doc. 81 at 13–15; Doc. 87-4 at ¶ 3
[37] *See* Doc. 81-1.

even a lay witness could testify about them. *Daubert* and Rule 702 simply do not govern personal-knowledge-based testimony.[38]

Nor does it matter that Mortland will testify as an expert as to other matters. As suggested in the commentary to Rule 702, the Court does not inform juries that a witness "is testifying as an 'expert.'"[39] So Mortland's qualification as an expert witness will not boost his credibility.

The Defendants protest that some of Mortland's observations—such as his suggestions that the front door has been replaced or renovated, that there appear to be dressing rooms in the facility, and that Sportsworld has a parent company—are false.[40] As to the first two facts, Mortland, as Plaintiff Neal's expert, is not required to accept as true the testimony from the Defendants' depositions or architectural drawings produced by the defense during discovery. Obviously, the door was either replaced or it wasn't and there are either dressing rooms or there aren't. But deciding who is telling the truth is a matter to be resolved a trial.

As to whether Defendant Sportsworld has a parent company, it seems—based on Mortland's statement in his supplemental report that he is "not privy" to the resources of the parent organization—that Mortland has no personal knowledge of Sportsworld's corporate relationships.[41] So he will not be allowed to testify as to the existence of a parent-subsidiary relationship. But the existence or non-existence of a parent company has no bearing on Mortland's other observations and opinions that (except as indicated below) will be admitted.

The Court will, therefore, **GRANT IN PART** and **DENY IN PART** the Defendants' motion as to Mortland's measurements and observations.

---

[38] *See* Fed. R. Evid. 702.
[39] *Id.*, advisory committee note, 2000 amend.
[40] Doc. 91 at 3, 6–7.
[41] Doc. 94-6 at 7.

**D. Opinions Regarding Compliance with the ADA and Achievability**

The Court can also easily resolve the parties' dispute over Mortland's assessment of the Defendants' compliance with the ADA and whether his proposed changes are "readily achievable." Simply put, although an expert opinion is not objectionable merely "because it embraces an ultimate issue,"[42] "a witness may not testify to a legal conclusion."[43] Instructing the jury, or informing itself, as to what the law requires and the definition of "readily achievable" is the Court's job—with the assistance of the parties' attorneys. Applying those legal rules to the facts is the job of the trier of fact.

As a result, the Court **GRANTS** the Defendants' motion as to the portions of Mortland's reports and testimony explaining the ADA's requirements and his opinion as to whether modifications of the facility are readily achievable. The Court notes that, at trial, Defendants' expert will not be able to testify as to these matters either.

**E. Suggested Improvements**

The Court sees no reason to exclude Mortland's opinions as to how the Defendants' facility could be made more accessible to handicapped persons. As a wheelchair bound person himself, Mortland obviously has experience that would allow him to assess a facility's accessibility.[44] Moreover, his carpentry and facility inspection experience further qualify him to provide opinion testimony on this matter.[45]

The Court also finds that Mortland's measurement methods were reliable. Although the Defendants believe Mortland should have taken or considered additional measurements and

---

[42] Fed. R. Evid. 704(a).

[43] *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014); *see also Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 593 (6th Cir. 2014); *Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

[44] Doc. 81-2 at 1.

[45] *Id.*

believe his conclusions are wrong,[46] that goes to weight, not to admissibility.[47]

The Court therefore **DENIES** the motions to exclude Mortland's testimony concerning ways that Defendants' facility could be made more accessible to the disabled.

## F. Cost of Suggested Improvements

Finally, the Court will exclude some of Mortland's opinions about the cost of the improvements he proposes. For the most part, the budgets he proposes appear proportionate to the changes proposed and the reason for the expenses appears obvious. The $600 expense for a portable ramp is to buy the ramp.[48] And so on.

That said, Mortland fails to show personal experience sufficient to give a foundation for his testimony related to the cost for reversing the front door swing ($6,500), for lowering the door threshold ($4,500), or for securing or removing floor mats ($1,500).[49] And those estimates seem disproportionate to the improvements suggested. [50] As Mortland provides no foundation or explanation for those calculations, the Court concludes that they are not reliable.

As a result, the Court will **GRANT** the motion to exclude as to those three estimates, but **DENIES** the motion as to the remainder of Mortland's proposed budgets.

## G. Compliance with Rule 26

Finally, the Defendants point out that Mortland failed to include with his report some of the information required by Rule 26 of the Federal Rules of Civil Procedure.[51] Namely, he failed

---

[46] *E.g.*, Doc. 81 at 4.

[47] *See Best*, 563 F.3d at 181 ("Admissibility under Rule 702 does not require perfect methodology."); *McLean v. 800011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere 'weaknesses in the factual basis of an expert witness'[s] opinion . . . bear on the weight of the evidence rather than on its admissibility.'" (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)) (omission in original)); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530.

[48] *See* Doc. 81-1 at 4.

[49] *Id.* at 8–10, 13–14, 16.

[50] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that a court may conclude that expert testimony is not reliable where "there is simply too great an analytical gap between the data and the opinion proffered.").

[51] Doc. 81 at 7–9

Case No. 1:17-cv-1625
Gwin, J.

to include a list of his prior publications, a list of the cases in which he has testified as an expert, and a statement of his compensation as an expert.[52]

But the defense has already obtained some of this information from the Plaintiff and discovered some on its own.[53]  The information Mortland failed to include could only be useful as impeachment evidence.  And the Defendants could have removed any time pressures that might result from receiving the omitted information only a few weeks before trial by asking Plaintiff Neal for the information instead of reflexively resorting to a motion to exclude.

For those reasons, the Court finds that any failure to comply with Rule 26 was harmless or at least not sufficiently prejudicial to warrant excluding Mortland's report and testimony.[54]  The Court therefore **DENIES** the motion to exclude for failure to comply with Rule 26.

Instead, exercising its discretion under Rule 37(c)(1) to tailor the remedy for a failure to disclose under Rule 26 to the actual harm that results,[55] the Court **ORDERS** Plaintiff Neal to provide the Defendants with the omitted information within five days of this order.

### III. MOTIONS TO STRIKE

The Court next considers Defendants' motions to strike portions of the affidavits of Plaintiff Neal and his father, Gerald Neal.

**A. Plaintiff Neal's Affidavit**

Defendants base their motion to exclude portions of Plaintiff Neal's affidavit on the "sham" affidavit doctrine.

"Under the sham affidavit doctrine, . . . a party may not file an affidavit [of a witness] that contradicts his earlier sworn testimony" to avoid summary judgment.[56]  "If the affidavit directly

---

[52] *Id.*
[53] *Id.* at 8–9.
[54] Fed. R. Civ. P. 37(c)(1).
[55] *See id.*
[56] *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016).

contradicts [the witness's] prior sworn testimony, it should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the contradiction.'"[57]  "If the affidavit does not directly contradict [the witness's] prior sworn testimony, it should be stricken if it is 'an attempt to create a sham fact issue.'"[58]

Most of Defendants' arguments about how Plaintiff Neal's affidavit is a "sham" do not warrant much discussion.  They are frivolous, picayune quibbles about differences in wording between Neal's deposition and his later affidavit.  For instance, in his deposition, Plaintiff Neal testified that he might return to Sportsworld to "see what . . . kind of apparel they have and possibly purchase something from there."[59]  In his affidavit, he avers that he "would like to visit the property to avail [him]self of the goods and services available at the property."[60]  The Court fails to see *any* contradiction between these statements, let alone one with any relevance to the parties' right to summary judgment.

Other "contradictions" that the Defendants point out resolve themselves when Plaintiff Neal's deposition testimony is read in context rather than with a myopic view towards manufacturing discrepancies.  For example, while Neal did testify that he had no "specific" plans to return to Sportsworld, he did so in response to opposing counsel's pressing for a specific plan (namely a date or time) to return.[61]  Obviously he didn't have such plans, since he can't make it through the door in his wheelchair—which is the point of this entire case.[62]  But his deposition made clear that Plaintiff Neal, as he attests in his affidavit, had a "definite" plan to return:  he planned to go back once the building was made accessible.[63]

---

[57] *Id.* (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)).

[58] *Id.* (quoting *Aerel, S.R.L.*, 488 F.3d at 908–09).

[59] Doc. 96-10 at 16.

[60] Doc. 87-2 at ¶ 5.

[61] *See* Doc. 96-10 at 16.

[62] *Id.*

[63] *Id.*

The only difference of any substance between Plaintiff Neal's affidavit and his deposition testimony is that his affidavit provides an additional explanation as to why he might return to Sportsworld: to ensure that they implement changes to bring the facility into compliance with the ADA.[64]  Defendants seem to think this contradicts Plaintiff Neal's testimony that he has no working knowledge of the ADA's technical requirements, including the ADA requirements for a portable ramp.[65]  But one hardly needs Darrow-like powers of legal discernment to tell whether the front step of Sportsworld remains in place or if a portable ramp is now available.

The Court finds no contradiction here.  While the affidavit does provide an additional explanation for Plaintiff Neal's desire to return to Sportsworld, it is one that is consistent with his actions throughout this litigation—including his willingness to maintain an ADA action against the Defendants' opposition.  The Court can find no "sham" motivation here.  Plaintiff Neal's desire to ensure compliance with the ADA appears genuine.

The Court therefore **DENIES** the motion to strike portions of Plaintiff Neal's affidavit.

### B. Gerald Neal's Affidavit

As for Gerald Neal's affidavit, the Court again sees no contradiction between the affidavit and Plaintiff Neal's deposition.  Moreover, it is unclear why it would matter if there was any contradiction since witnesses are allowed to contradict each other under the sham affidavit rule, just not themselves.[66]

But the Court will strike the portion of paragraph 5 of Gerald Neal's affidavit that discusses Plaintiff Neal's intent to return to Sportsworld. Rule 56 of the Federal Rules of Civil Procedure requires that any "affidavit or declaration used to support or oppose a motion . . . be made on

---

[64] Doc. 87-2 at ¶ 5.

[65] Doc. 92-1 at 5–6.

[66] *Affidavit*, Black's Law Dictionary (10th ed. 2014) ("**[S]ham affidavit.** (1942) An affidavit that contradicts clear testimony *given by the same witness* . . . ."(second emphasis added)).

personal knowledge [and] set out facts that would be admissible in evidence . . . ."[67]  Gerald Neal can have no personal, non-hearsay knowledge of Plaintiff Neal's thoughts and intentions.

The Court therefore **GRANTS** the motion to strike Gerald Neal's affidavit as to any portion of paragraph 5 discussing Plaintiff Neal's intentions.  The motion is **DENIED** as to the remainder of the affidavit.

## IV. STANDING

Turning now to the motions for summary judgment, the Defendants first claim that Plaintiff Neal lacks standing to pursue his federal ADA claim.[68]  The Court disagrees.

The ADA permits private plaintiffs to seek only prospective injunctive relief.[69]  Therefore, in order to have standing to sue under the ADA, a plaintiff must demonstrate a "threat of future injury" by showing an "intent to return to the noncompliant accommodation" or "that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers."[70]

"[T]o support standing at the summary judgment stage a plaintiff must only 'set forth by affidavit or other evidence specific facts [that would be sufficient to establish standing] which for the purposes of the summary judgment motion will be taken as true.'"[71]  Plaintiff Neal has sufficiently shown standing here.

First, as discussed above, Plaintiff Neal avers in an affidavit that he intends to return to Sportsworld's Court Street facility after accessibility modifications are made to ensure that the

---

[67] Fed. R. Civ. P. 56(c)(4).
[68] Doc. 88 at 9–12; Doc. 96 at 7–9.  Because standing is a component of subject matter jurisdiction and the Court has jurisdiction over Plaintiff Neal's state-law claims only by way of 28 U.S.C. § 1367's grant of supplemental jurisdiction, the Court would lack jurisdiction over the entirety of this lawsuit if Plaintiff Neal lacked standing.
[69] 42 U.S.C. §12188(a)(2).
[70] *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x. 576, 580 (6th Cir. 2014).
[71] *Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 430 n.2 (6th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

facility is ADA compliant.[72]  That is sufficient to demonstrate standing.[73]

Second, Neal testified in his deposition that he plans to return to Sportsworld's Court Street facility to look at its pre-printed merchandise and perhaps make a purchase.[74]  And Neal reinforced that desire in his later affidavit.[75]  Although the Defendants point to some testimony that casts doubt on the credibility of those assertions, such as Neal's failure to access Sportsworld's website,[76] the Court does not weigh the credibility of witnesses at the summary judgment stage.[77]

Plaintiff Neal does not specify precisely *when* he will return to the Court Street facility. But it is impossible for Neal to set a date for his return without knowing when Defendants will remove the barriers that prevent him from entering.  His statement that he plans to return once modifications are made is specific enough to support standing.[78]

Finally, as to Plaintiff Neal's claim regarding the interior features of the building, Courts have concluded that a plaintiff who encounters one barrier may challenge others at the same facility, regardless of whether he encounters them.[79]  Otherwise, plaintiffs would be forced to engage in piecemeal litigation that would be a waste of both the parties' and the Court's time and resources.[80]

---

[72] Doc. 94-1 at ¶ 5.

[73] *See Houston v. Marod Supermarkets*, 733 F.3d 1323, 1330–34 (11th Cir. 2013); *Tandy v. City of Wichita*, 380 F.3d 1277, 1285–88 (10th Cir. 2004); *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–379 (1982).  These cases all concern the ability of so-called "testers" to bring anti-discrimination suits.  A tester is someone who visits a facility purely to see if it complies with anti-discrimination laws, not out of any interest in the goods or services available at that facility.  *See Havens Realty*, 455 U.S. at 373.  Although Plaintiff Neal denied knowing what a tester is, Doc. 96-10 at 8, it is plain that—inasmuch as he plans to return to Sportsworld's Court Street premises to ensure that it complies with the ADA—he at least has "tester" standing, even if he is not, by trade, a tester.

[74] *Id.* at 16.

[75] Doc. 94-1 at ¶ 5.

[76] *E.g.*, Doc. 88-1 at 11.

[77] *E.g.*, Doc. 96 at 8–9.

[78] *See Houston*, 733 F.3d at 1340.

[79] *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188–89 (2d Cir. 2013).

[80] *Id.* at 189.

# V. MOTIONS FOR SUMMARY JUDGMENT

The Court next addresses the motions for summary judgment on the merits. The Court grants both motions only in part.

## A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[81] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[82]

Once the moving party has done so, the non-moving party must set forth specific facts in the record—not mere allegations or denials in pleadings—showing a triable issue of fact.[83] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[84] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[85]

In the summary judgment context, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[86] The proponent bears the burden of showing that the material is either admissible as presented or can be presented in an admissible form.[87]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly

---

[81] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[82] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[83] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[84] *Id.* at 586.
[85] *Killion*, 761 F.3d at 580 (internal citations omitted).
[86] Fed. R. Civ. P. 56(c)(2).
[87] *Id.* (2010 Advisory Committee comments).

contradicts that version.[88]  Otherwise, a district court does not weigh competing evidence or make credibility determinations.[89]

## B. Compliance with the ADA

The ADA requires places of public accommodation "to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."[90]

### 1. Features of the Facility that Plainly Violate the ADA

No one contests that the front step of Defendants' facility and other features of the store's entryway are a barrier that prevents disabled persons from partaking "in the full and equal enjoyment" of Sportsworld's facilities.[91]  The Court therefore **GRANTS** the Plaintiff's motion for summary judgment as to the entryway's compliance with the ADA's accessibility requirements.

Plaintiff Neal also claims that Defendant should be required to post signs explaining how to contact the store to obtain assistance—whether that assistance is the alternative means of service proposed by the Defendants or the deployment of the portable ramp proposed by Plaintiff Neal.[92]  Defendants protest that they already list their telephone number and website on their storefront, so that should be enough.[93]

While the ADA may not explicitly require signs in the absence of an accessible entrance,[94] it does require stores to do what they can to make their merchandise available by alternative means

---

[88] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

[89] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

[90] 42 U.S.C. § 12182(b)(2)(A)(iv).

[91] *See generally* Docs. 87, 88, 94, 96, 97, 98; 42 U.S.C. § 12182(a).

[92] Doc. 88-12 at 11–12.

[93] Doc. 88-1 at 22.

[94] *See* U.S. Dep't. of Justice, *2010 ADA Standards for Accessible Design*, § 216.6 (2010) (hereinafter "2010 Standards").

(such as curbside service) if a facility cannot be made accessible.[95]   And part of making their

merchandise available is surely informing disable persons of those alternative means.   Merely

placing a phone number or website on the storefront, while allowing potential patrons to contact

the store, tells them nothing about what (if any) potential assistance is available.   Defendant makes

no argument that improved signage would not be readily achievable.   The Court therefore

**GRANTS** Plaintiff's motion for summary judgment as to the signage.

### 2. Features About Which There is a Genuine Dispute

The parties' experts disagree as to whether various floor mats in the Court Street facility

pose a hazard to person in wheelchairs.[96]   There is also conflicting evidence as to whether several

doors within the facility marked "employees only" lead to publicly utilized fitting rooms such that

the doors and doorways must comply with the ADA.[97]   As a result, there are genuine disputes of

material fact as to whether these features of the facility comply with the ADA's requirements.

### 3. Features that Do Not Violate the ADA.

The Court will, however, grant the Defendants' motion for summary judgment as to the

light switches, check-out counter, and display racks at the Court Street facility.

First, Plaintiff's allegation that the facility's light switch or switches violate the ADA

because they are too high above the ground fails.   As far as private entities are concerned, the ADA

applies only to places of public accommodation.[98]   Thus, the ADA applies to only those portions

of the facility that are open for use by the public, not to features that are reserved for private or

employee-only use.[99]   Plaintiff Neal offers no evidence that Sportsworld regularly permits the

public to operate its light switches.

---

[95] 28 C.F.R. § 36.605(a).
[96] *Compare* Doc. 96-5 at 9–11 *with* Doc. 94-4 at 13–14, 16.
[97] *Compare* Doc. 94-7 at 10 *with* Doc. 94-4 at 20; Doc. 94-6 at 4.
[98] *See* 42 U.S.C. § 12182(a).
[99] *See Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1178–79 (C.D. Cal. 1998).

Second, Plaintiff Neal's expert protests that the service counter at the Court Street Facility does not allow for a frontal approach because it fails to provide adequate knee or toe clearance.[100] This claim fails because Defendants are under no obligation to allow for a frontal approach; a parallel approach is permitted by the regulations implementing the ADA.[101] As one might expect, unlike a frontal approach counter, there are no knee or toe space requirements for a parallel approach counter.[102]

Finally, Plaintiff Neal's expert also indicates that merchandise in the store is displayed too high for wheelchair-bound patrons to reach.[103] Defendants do not argue that modifying the display racks is not readily achievable, but instead argue that they are under no obligation to make the shelving accessible so long as staff members are available to assist disabled patrons in reaching the merchandise.[104] The ADA regulations exempt self-service shelving from their reach-range requirements.[105] As Department of Justice's guidance manual for small business owners explains: "Shelves and counters must be on an accessible route with enough space to allow customers using mobility devices to access merchandise. However, shelves may be of any height since they are not subject to the ADA's reach range requirements."[106]

For those reasons, the Court concludes that these features do not violate the ADA and **GRANTS** the Defendants' motion for summary judgment as far as they are concerned.

**C. Historical Status**

Historical buildings are exempt from some of the requirements of the ADA.[107] The

---

[100] Doc. 88-12 at 17.
[101] 2010 Standards §§ 904.4, 904.4.1, 904.4.2.
[102] *Compare* 2010 Standards § 904.4.1 (parallel approach) *with id.* § 904.4.2 (frontal approach).
[103] Doc. 88-12 at 21–24.
[104] Doc. 88-1 at 24–25.
[105] 2010 Standards, § 225.2.2.
[106] U.S. Dep't of Justice, *ADA Update: A Primer for Small Business* 15 (2011).
[107] *See* 28 C.F.R. § 36.405.

Defendants appear to claim historical protection for the Court Street facility.[108] But they have only submitted evidence as to the historical features of the building's *exterior*.[109]

Plaintiff Neal's two proposed remedies do not appear to affect the historic attributes of that exterior. Use of a portable ramp obviously does nothing to a building's exterior. And the "internal build" suggested by Defendants' expert and adopted by Neal changes only minor attributes, such as the building's door and the concrete step.[110]

The Defendants have failed to submit any evidence demonstrating that there is any historic significance to those features. Indeed, while the Defendants' expert's report explicitly states that an exterior modification to the building might affect its historic attributes, it makes no such claim about the proposed "interior build."[111]

In his rebuttal report, Defendant's expert does say (after discussing both the interior and exterior modification possibilities) that "the existing entrance configuration is a significant part of and consistent with the historical character of the building and the alterations necessary to make the building accessible would destroy the historical significance of the building."[112] But this contradicts his earlier report and is far too vague to create a genuine dispute of fact.

Moreover, Defendant Parish testified that she and her husband replaced the facility's door in the 1970s and were able to get approval from the city to do so.[113] While Parish also testified that she earlier had to get city approval to add a bathroom to the building because of its historical status,[114] no evidence in the record suggests that the interior modifications proposed by Defendants' expert would be subject to or unlikely to receive similar approval.

---

[108] *See generally* Docs. 88, 96.
[109] *See* Doc. 96-4 at 2–7.
[110] *Id.* at 11–12.
[111] Doc. 96-4 at 2–12.
[112] Doc. 88-6 at 2.
[113] Doc. 87-9 at 17–18.
[114] *Id.* at 10.

The Court therefore **GRANTS** Plaintiff Neal's motion for summary judgment as to any claim that the Court Street facility's historic status exempts it from compliance with the ADA.

### D. Readily Achievable

While conceding that Court Street facility's entryway does not comply with the ADA, the Defendants argue that there are no "readily achievable" solutions to the problem.[115]  Plaintiff responds that two potential solutions are readily achievable: (1) the use of a portable ramp or (2) the interior renovations suggested by Defendants' expert.[116]  The Court concludes that there is a genuine dispute of material fact as to this issue.

 A proposed modification is readily achievable if it is "easily accomplishable and able to be carried out without much difficulty or expense."[117]  In determining whether a modification satisfies that definition, a court should consider: (1) "the nature and cost of the action;" (2) "the overall financial resources of the facility or facilities involved;" (3) "the number of persons employed at such facility;" (4)"the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;" (5) "the overall financial resources of the covered entity;" (6) "the overall size of the business of a covered entity with respect to the number of its employees;" (7) "the number, type, and location of its facilities;" (8) "the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity;" and (9) "the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity."[118]

#### 1. Portable Ramp

Defendants argue that a portable ramp is not readily achievable for a number of reasons.

---

[115] *E.g.*, Doc. 88-1 at 13–20.
[116] *E.g.*, Doc. 94 at 15–23.
[117] 42 U.S.C. § 12181(9).
[118] *Id.* This statutory directive directly contradicts the Defendants' assertion that the Court is only to consider "the current year's profits of the particular facility."  Doc. 97 at 8.  The Court therefore rejects that argument.

First, they point out that—due to the slope of the sidewalk outside the Court Street Facility—an ADA compliant portable ramp would be too long to fit between the curb and the street.[119] But where space is limited the ADA regulations allow for a ramp that is steeper than is generally permissible.[120]

Second, Defendants argue that the single employee who works at the Court Street Facility could not lift or operate the ramp on her own.[121] But they ignore that Sportsworld's other facility is within walking distance, so another employee could presumably come to help.[122] This is enough to raise a dispute of fact as to whether the ramp is a readily achievable option.

Third, Defendants protest that having the employee outside the facility setting up a ramp means that there would be no one to serve other customers or guard against theft.[123] That argument is undermined, however, by the nearness of Sportsworld's other facility and the fact that there is only one public entrance[124]—meaning that (even if someone from the other location couldn't come to help) thieves would have to pass the employee setting up the ramp with their ill-gotten goods and the employee could kindly ask other customers to wait a few minutes while she assisted a disabled individual.

Finally, Defendants protest that a portable ramp would pose a safety hazard to pedestrians by partially or completely blocking the sidewalk.[125] As the Court already mentioned, though, the use of a shorter ramp would be permissible, so there would be no need to block the entire sidewalk.

---

[119] Doc. 88-1 at 16.
[120] 28 C.F.R. §36.304(d)(3) ("If, as a result of compliance with the alterations requirements specified in paragraph (d)(1) and (d)(2) of this section, the measures required to remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements. Such measures include, for example, providing a ramp with a steeper slope or widening a doorway to a narrower width than that mandated by the alterations requirements. No measure shall be taken, however, that poses a significant risk to the health or safety of individuals with disabilities or others.").
[121] Doc. 88-1 at 16.
[122] Doc. 94-10 at 12.
[123] See Doc. 88-1 at 16–17.
[124] Doc. 88-3 at ¶ 12; Doc. 94-7 at 11.
[125] Doc. 88-1 at 16.

And it is not clear that any temporary tripping-hazard caused by the ramp is such a severe danger as to prevent a portable ramp from being a readily achievable option.[126]

All this goes to show that, despite the potential problems a portable ramp might pose, there is a genuine dispute of material fact as to whether it is a readily achievable solution to the lack of accessibility at Defendants' facility. The Court therefore **DENIES** the motions for summary judgment as to whether a portable ramp would be readily achievable.

### 2. Interior Build

The Defendants' expert also suggested that the Court Street Facility could be made accessible by, among other things, removing the front step and lowering the floor.[127] Plaintiff adopted that suggestion and argues that it is readily achievable.[128]

Defendants primary argument as to why this is not readily achievable is that it is too expensive.[129] Their expert estimated that it would cost approximately $29,880.00.[130]

As Plaintiff Neal points out, however, Defendant Parish's deposition and other evidence in the record provides sufficient evidence that these changes might not be as big a financial burden as Defendants suggest. For instance, Defendant Parish has approximately $500,000 in an investment account and made more than $20,000 in rent from her properties in both 2013 and 2014.[131] While Sportsworld's income appears to be more limited, it still managed to bring in between $9,630.00 and $45,298.00 in yearly profit between 2012 and 2016.[132]

Defendants also point to the fact that the interior build would cause them to lose

---

[126] *Snyder v. Lady Slings the Booze, LLC*, 73 F. Supp. 3d 871, 876 (W.D. Ky. 2004).
[127] Doc. 88-5 at 11.
[128] *E.g.*, Doc. 87-1 at 24–25.
[129] Doc. 97 at 7.
[130] Doc. 88-5 at 12.
[131] Doc. 94-7 at 4, 12.
[132] Doc. 94-11 at 2–6.

approximately one fourth of Sportsworld's retail floor space.[133]  But since Sportsworld's owner

testified that retail sales account for only 10% of the store's sales,[134] it is not clear that this renders

the "interior build" infeasible.

This evidence creates a genuine dispute of material fact as to whether the "interior build"

suggested by Defendants' expert is readily achievable.  The Court therefore **DENIES** the motions

for summary judgment as to whether the "interior build" is readily achievable.

### E. Alternatives

Defendants also point out that they have a website, operate another location, and are willing

to provide curbside service.[135]  But the ADA does not permit the use of these alternatives to

accessibility where removing the barriers is readily achievable.[136] So they have no impact on the

Court's summary judgment decision.

### F. Ohio State Law Claims

Neither party argues that Plaintiff Neal's claims should be resolved differently under

Ohio's state-law equivalent to the ADA: Ohio Revised Code § 4112.02(G).  That is likely because,

"[i]n Ohio, courts use federal law to analyze disability discrimination . . . claims under the Ohio

Revised Code § 4112."[137]  Thus, the Court sees no reason to resolve any of the issues above

differently under state law.[138]

---

[133] Doc. 97 at 8.
[134] Doc. 94-10 at 8.
[135] Doc. 88-1 at 20.
[136] *Snyder*, 73 F. Supp. 3d at 876.
[137] *O'Donnell v. Univ. Hosps. Health Sys.*, No. 1:16-cv-2480, 2018 WL 1627436, at *6 n.7 (N.D. Ohio Apr. 4, 2018).
[138] Plaintiff Neal also asserts a cause of action under the Ohio Administrative Code. Doc. 1 at ¶¶ 12–19.  The Court is unsure as to whether the OAC creates a private cause of action or, if it does, how that cause of action would differ from a cause of action under O.R.C. § 4112.02.  Indeed, it appears to have been repealed.  O.A.C. § 4101:1-11.  But the Defendant has not moved to dismiss that claim or for summary judgment on this basis, so the Court will treat it as equivalent to the § 4112.02 claim.

## G. Conclusion

In sum, the Court **GRANTS** Plaintiff Neal's motion for summary judgment as to the Court Street facility's entrance's ADA compliance, the facility's signage, and the facility's historical status. The Court also **GRANTS** the Defendants' motion for summary judgment as to the facility's ADA compliance as to the light switches, check-out counter, and merchandise displays. The Court **DENIES** both motions for summary judgment as to all other issues.

## V. MOTIONS FOR A BENCH TRIAL AND BIFURCATION

Finally, the Court addresses the motions for a bench trial and bifurcation. The parties agree that Plaintiff Neal is not entitled to a jury trial as to his ADA claim.[139] The case law supports that position,[140] so that claim will be tried to the bench rather than a jury.

The Court will not, however, exercise its discretion to bifurcate Plaintiff Neal's ADA claims from his state law claims. Both claims raise nearly identical questions of fact and law and there is no sense in forcing the parties to bear the burden and expense of presenting the same evidence twice.[141] Doing so would also be an inefficient use of the Court's resources.[142]

The case will proceed to trial as scheduled. At the conclusion of trial, the state law claim will be submitted to the jury for decision. Moreover, as a jury will already be present, the Court plans to submit the ADA claim to the jury for an advisory verdict as authorized by Rule 39(c)(1) of the Federal Rules of Civil Procedure. The Court will render a final decision on the ADA claim after the jury returns its verdicts. If the parties have any objection to the use of an advisory jury,

---

[139] Doc. 90 at 3–5; Doc. 95 at 1.

[140] *Leary v. Daeschner*, 349 F.3d 888, 910 (6th Cir. 2003) ("[T]he chief focus to be made when determining whether a jury trial right exists is the nature of the relief sought. If the remedy sought is injunctive relief and/or back pay, no jury trial right attaches. In the ordinary case, if the relief sought includes compensatory and/or punitive damages, then there does exist a right to trial by jury." (quoting *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 708 (6th Cir. 1979))).

[141] *See* Fed. R. Civ. P. 42(b) (allowing court to bifurcate trial "to expedite [or] economize").

[142] *Id.*

-23-

they should include it in their final pretrial submissions.

## IV. CONCLUSION

For all those reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the cross-motions for summary judgment.  Trial will proceed as scheduled on the following questions:

1. Whether certain interior features of the Court Street facility—namely, its floor mats and interior doors—comply with the ADA and its Ohio state law equivalent.

2. Whether accessibility modifications to the Defendants Sportsworld and Parish's facility are "readily achievable" under the ADA and its Ohio state law equivalent; and

3. What damages, if any, Plaintiff Neal is entitled to under Ohio state law.

The Court **GRANTS IN PART** and **DENIES IN PART** the motions to exclude Mortland's testimony.  Mortland may not testify as to what the ADA requires or the particular estimates discussed above.  But the rest of his testimony will be admitted. Plaintiff Neal is **ORDERED** to file, within five days of this order, supplements to Mortland's expert report sufficient to bring it into compliance with Rule 26.

The Court **DENIES** the motion to strike portions of Plaintiff Neal's affidavit.  The Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike portions of Gerald Neal's affidavit.

Finally, the Court **GRANTS** the motion for a bench trial on Plaintiff Neal's ADA claim, but **DENIES** the motion to bifurcate.

IT IS SO ORDERED.

Dated:  April 11, 2018                                          _s/             James S. Gwin_____
                                                                              JAMES S. GWIN
                                                                              UNITED STATES DISTRICT JUDGE